**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| In Re: | ) | Case No. | 14-23884 |
| | ) | | |
| Stephanie Sykes | ) | Chapter: | Chapter 13 |
| | ) | | |
| Debtor, | ) | Judge: | Hon. Janet S. Baer |

### TRUSTEE'S RESPONSE TO DEBTOR'S MOTION TO MODIFY PLAN

NOW COMES the Trustee, Glenn Stearns Chapter 13 Trustee, and in response to the Debtor's Motion to Modify Plan states as follows:

#### BACKGROUND

The Debtor, Stephanie Sykes, filed her petition and plan under Chapter 13 on June 27, 2014. The plan, which was confirmed on August 22, 2014, provided payments of $580.00 monthly for 48 months and a minimum dividend to general unsecured creditors of 10%. The Court entered an order modifying the plan on October 16, 2015 to defer the default and decrease the payment to $420.00 per month beginning with the October, 2015 payment.

The Debtor's original schedule B did not list a personal injury suit (docket entry #1). At the 341 meeting, the Debtor disclosed she had a pending personal injury claim. Based on the settlement agreement documents, this accident occurred on April 30, 2009. After the 341 meeting was held on July 30, 2014, the Debtor filed amended schedules B and C disclosing the pending personal injury claim with a current value of Unknown and exempting $15,000.00 of the proceeds (docket entry #15).

1

There was nothing stated in the confirmed plan about this lawsuit but the confirmation order stated that "All property of the estate, as specified by the 11 U.S.C. §§ 541 and 1306, will continue to be property of the estate following confirmation, unless (1) the plan provides for surrender of the property or (2) the property is sold pursuant to the plan or court order" (docket entry #18).  The case was confirmed on August 22, 2014 and the personal injury case settlement agreement is dated October 10, 2014.  The Debtor never amended the schedules to reflect the settlement of the lawsuit, which happened shortly after confirmation.

The Trustee proceeded as if the case had not been settled due to the fact that the Debtor never disclosed the settlement to the trustee's office or amended schedule B to reflect the settlement amount.  As part of the closing audit, the Trustee reached out to the Debtor's attorney to find out the status of the case.  It was not until this point that the Trustee's office found out that the case had settled right after confirmation of the plan.  The Trustee's office requested a copy of the settlement agreement, which was provided by the Debtor, and upon realizing that there were non-exempt net proceeds that should have been turned over to the Trustee's office, the Trustee filed a motion to modify the plan on April 24, 2019.  The Trustee brought the motion to modify the plan pursuant to 11 U.S.C. § 1329 to require a total plan payments of $38,451.00 and to require the debtor to remit the net non-exempt proceeds of her injury claim to the trustee for the benefit of unsecured creditors to ensure that the plan complies with § 1325(a)(4).   In response to the Trustee's motion to modify the plan, the Debtor's attorney filed a motion to modify the plan on June 7, 2019. The Debtor's motion to modify the plan requests that the requirement for her to turn over the non-exempt proceeds of her personal injury settlement be waived.  On June 28, 2019, the Court entered an order on the

Debtor's Motion to Modify Plan, which is docket entry #42, requiring the Movant to file supplemental materials on or before July 26, 2019; the Trustee to file a response on or before August 9, 2019 and setting status for August 23, 2019 (docket #47). On July 26, 2019, the Debtor filed a response to the Trustee's Motion to Modify the Plan, which is docket #37 (docket #49).

**ARGUMENT**

**I. The Debtor had an obligation to amend schedule B when the personal injury claim settled in October 2014**

"A debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets or potential assets to the bankruptcy court. 11 U.S.C. §§ 521 (1), 541 (a)(7). 'The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change.' Burnes, 291 F.3d at 1286. This duty applies to proceedings under Chapter 13 and Chapter 7 alike because 'any distinction between types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies." *Robinson v.Tyson Foods,* 595 F.3d 1269, 1274 (11th Cir. 2010) ((quoting *Burnes v Pemco Aeroplex, Inc.* 291 F.3d 1282 (11th Cir. 2002 and *De Leon v. Comcar Industries, Inc.* 321 F.3d 1289,1291 (11th Cir.2003)." *Robinson v.Tyson Foods,* 595 F.3d 1269, 1274 (11th Cir. 2010)). The Debtor had a duty to inform the Trustee's office of the settlement and/or to amend schedule B to disclose the settlement amount. By not doing so, the Debtor was telling the Trustee and creditors that the case had not settled. If the Debtor

is allowed to not disclose the settlement and then benefit from that non-disclosure, then the Court is rewarding the debtor for failure to disclose settlement of the suit.

The Debtor did not originally schedule the pending personal injury claim. It was not until the pending suit was disclosed at the 341 meeting that the Debtor filed an amended schedule B disclosing the suit with an unknown value. Paragraph #2 of the Debtor's Motion to Modify Plan, it states "The value of this lawsuit was unknown at the time of filing because there was no guarantee that anything would arise from it." The amended schedule B was filed on August 1, 2014. Less than 75 days later, the case settled for a gross amount of $67,500.00. It is hard to believe that the amount was completely unknown just 75 days earlier. The settlement amount was not disclosed to the Trustee's office when the debtor clearly knew she only had a $15,000.00 exemption based on the amended schedule C. The Trustee's office did not find out about the settlement until the Trustee's office reached out to the Debtor attorney's office to find out the status of the case during the closing audit.

If the schedules had been amended for the settlement amount, then the Trustee's office would have brought the motion to modify for turn-over of the non-exempt personal injury proceeds at the beginning of the case. Any argument about it being unfair to bring the motion to modify late in the case is disingenuous because the delay was directly the result of the Debtor's failure to disclose the settlement to the Trustee's office when it happened in 2014.

II.     **Good faith must be satisfied at post-confirmation modification**

Good Faith must be satisfied at a post-confirmation modification. *See In re Davis,* 439 B.R. 863, 867 (Bankr. N.D. Ill. Dec. 16, 2010); *In re Kearney,* 439 B.R. 863, 867 (Bankr. N.D. Ill. Dec. 16, 2010); and *In re Betancourt,* No. 05-11052, 2009 WL 2898825, at *4 (Bankr. D.P.R. Aug. 5,

4

2009). Good faith is determined on a case by case basis after considering the totality of the circumstances. *Kitchens v. Georgia Railroad Bank and Truste Company,* 702 F.2d 885,888-89 (11th Cir. 1983).

Here, the debtor was not acting in good faith when she failed to disclose the settlement funds and spent property of the estate without court permission. One can only assume that she never informed her personal injury attorney of the bankruptcy case because when a personal injury attorney becomes aware of the bankruptcy, the personal injury attorney reaches out to us to discuss the settlement and distribution of funds. This did not happen in this case.

The debtor's motion to modify section #7 says "The Debtor has informed her attorney that she spent the proceeds from her settlement entirely on previous/ongoing medical expenses, catching up on household bills due to falling behind of them while she was out of work for approximately 7 months, and paying back friend/family who helped her over the years as a result of the car accident." The accident occurred in 2009 so any medical bills should have been resolved as part of the settlement or included in the bankruptcy filing. Based on the medical bills provided, many of them were pre-petition and pre-settlement. In addition, if she is referring to additional bills due to being out of work due to the accident, again, that doesn't make any sense since the accident was in 2009 and the settlement wasn't until 2014. This argument is weak at best because any outstanding debts should have been included in the bankruptcy filing. Plus, since the time period between the filing and the settlement was less than 4 months, the Debtor should not have acquired many debts in this small time period. Based on the schedule I at the time of filing, the debtor was employed at Chicago Podiatric Surgeons. The debtor was clearly free to use the exempt funds as she wished but it is bad faith

5

to use non-exempt property of the estate to pay family and friends or to even pay necessary bills.

"In *In re Barbosa*, a case in which debtors sold property in excess of what was required to satisfy their confirmed Chapter 13 plan and were going to receive a discharge while retaining the excess proceeds of the sale (a significant amount), the Bankruptcy Court, explained that 'congress's intent in enacting Chapter 13 [was] to encourage debtors to repay their debts to the best of their ability.' Debtors there were engaged in a bad faith manipulation of the Bankruptcy Court, when they insist on retaining excess sale proceeds and obtaining the broad discharge afforded by section 1328(a). Although the facts here differ, the end result is similar: Debtors here would pay creditors a small amount, keep any proceeds from the tort cause of action, while obtaining the extensive discharge provided to Chapter 13 debtors." *In re Betancourt,* No. 05-11052, 2009 WL 2898825, at *4 (Bankr. D.P.R. Aug. 5, 2009) (citing *In re Barbosa*, 236 B.R. 540, 556 (Bankr. Mass. 1999); aff'd. 235 F.3d 31 (1st Cir 2000). The actions by the Debtor in this case (failing to disclose the settlement and then spending estate property without court permission) while obtaining a broad discharge is very similar to the cases above. Therefore, the Debtor's request for waiver of the turnover of non-exempt personal injury funds is not brought in good faith and is arguable a bad faith manipulation of the Bankruptcy Code.

### III. The net non-exempt personal injury proceeds are an asset of the estate and must be turned over to the Trustee's office as an additional payment for unsecured creditors in order to satisfy section 1325(a)(4)

Property of the estate is defined in section 541(a)(5) and 1306 (a)(1). The net non-exempt proceeds from a personal injury case are property of the estate. *In re Waldron*, 536 F.3d 1239, 1241 (11th Cir. 2008); *McKinney v. Russell*, 567 B.R. 384,390-392 (Bankr. M.D. Ala. 2007).

6

The confirmation order in this case clearly states, "All property of the estate, as specified by the 11 U.S.C. § 541 and 1306, will continue to be property of the estate following confirmation, unless (1) the plan provides for surrender of the property, or (2) the property is sold pursuant to the plan or court order." In addition to the general statutory duty to disclose the settlement, the confirmation order supports the proposition that the net non-exempt personal injury proceeds are estate property and belong to the bankruptcy estate and not her personally. With or without a plan provision specifically requiring turnover of the net non-exempt proceeds, the proceeds are an asset of the estate and must be turned over to the Trustee's office.

In order for a Chapter 13 plan to be confirmed or for a modification of a confirmed plan to be granted, a court must first determine if unsecured creditors are receiving at least as much if the estate were liquidated under Chapter 7. *In re Walker*, No. 07-70358 2010 WL 4258274 (Bankr. C.D. Ill. Oct. 21, 2010). Without turnover of these funds, the plan does not meet the liquidation requirement under 1325 (a)(4). In general, value/liquidation is determined at the time of filing but with inheritances and post-petition settlements, it is not uncommon to determine that amount at a later date. "Debtors' tardy disclosure of the personal injury cause of action does not relieve the Debtors of their obligation to treat their unsecured creditors as required by section 1325(a)(4). A liquidation analysis is required not only when a plan is initially confirmed, but also at the time of any post-confirmation modification. 11 U.S.C. section 1329(b)(1); 11 U.S.C. section 1325(a)(4)." *In re Walker*, No. 07-70358 2010 WL 4258274 (Bankr. C.D. Ill. Oct. 21, 2010). In this case, I would argue that the tardy disclosure of the settlement amount has the same affect. If this case had been a Chapter 7 case, the Chapter 7 trustee would have become involved in the suit and obtained the non-exempt proceeds for the

7

unsecured creditors. In order to meet the requirements of 1325(a)(4), the net non-exempt proceeds need to be paid to the trustee as an additional payment for unsecured creditors. The Trustee's motion to modify requires payment of the funds necessary to meet the liquidation requirement.

The Debtor's response to the motion to modify argues that the Court should look at concepts of fresh start for the debtor and fairness to creditors in reviewing the motion to modify. As to the fresh start of the debtor, the debtor shouldn't get the benefit of the discharge without paying the net non-exempt funds into the case when she failed to disclose the settlement and spent estate funds in contravention of the confirmation order and without the court's permission. As to the fairness to creditors, the unsecured creditors rely on the chapter 13 trustee to protect their interest. If the net non-exempt proceeds are not paid to the Trustee's office for the benefit of unsecured creditors in this case, then not only is it unfair to creditors but it is in direct violation of 1325 (a)(4). As to our motion to modify, it is fair to the creditors that they receive the funds required per a Chapter 7 liquidation analysis. In addition, the Debtor will still get her fresh start after meeting her obligation of turning over the net non-exempt proceeds as required per section 1325(a)(4).

In their response, the Debtor talks about how if she had known about the requirement to turn over the funds, then she would have asked for permission to keep the funds to pay for necessary things. The first problem with that statement is that if she had disclosed the settlement amount, then she would have known that she needed to turn over funds. The second problem with that statement is that the Court would not have allowed her to keep the

Case 14-23884    Doc 51    Filed 08/09/19    Entered 08/09/19 15:17:04    Desc Main
Document      Page 9 of 10

funds as these funds are property of the estate and required to be paid to unsecured creditors per 1325(a)(4).

## CONCLUSION

The net non-exempt funds are property of the estate and should have been turned over to the Trustee's office at the time of receipt. The Debtor had notice of the requirement based on the confirmation order that clearly states that property remains property of the estate after confirmation. The delay in the Trustee making the Debtor aware of the fact that she needed to turn over these funds was the fault of the debtor alone by failure to disclose the settlement amount.

The Trustee requests the denial of the Debtor's Motion to Modify Plan to waive the requirement of turning over the net non-exempt proceeds to the trustee on three grounds: 1. The Debtor did not disclose the settlement amount as required per the Bankruptcy Code and supporting case law from other Circuits; 2. The motion is not brought in good faith as the Debtor not only did not disclose the settlement but she spent property of the estate without court permission; and 3. The Bankruptcy Code and supporting case law requires that the Chapter 7 liquidation test be met as part of the analysis regarding a motion to modify plan. In addition, The trustee also requests the granting of the Trustee's Motion to Modify Plan in order to protect the unsecured creditors under § 1325 (a)(4). The Trustee's motion is appropriate because it was filed before 60 months had run and the case is not paid in full yet.

Wherefore, for the foregoing reasons, the Trustee requests this Court deny Debtor's Motion to Modify Plan and grant the Trustee's Motion to Modify Plan.

                    Respectfully Submitted


By: /s/ Pamela L. Peterson
Pamela L. Peterson


Glenn Stearns, Chapter 13 Trustee
801 Warrenville Rd., #650
Lisle, IL 60532
Phone: 630-981-3888
Fax: 630-981-3896
Email: Peterson_p@lisle13.com